## Commonwealth v. Starr

C.P. of Lawrence County, nos. 737 & 737A of 1997.

*Diane D. Doughty,* for Commonwealth.
*David H. Acker,* for defendant.

MOTTO, *J.,* February 26, 1998—Before the court for disposition is the defendant's omnibus pretrial motion seeking dismissal of all charges filed in the above case and habeas corpus relief, contending that the evidence presented at the preliminary hearing held in this case was insufficient to hold the defendant for court as to all charges and that as to the charge of indecent assault, prosecution of the same is barred by the applicable statute of limitations.

The defendant is charged in the informations filed in this case with two counts of rape, in violation of 18 Pa.C.S. §3121-1 and §3121-2; two counts of indecent assault, in violation of 18 Pa.C.S. §3126(A)(1) and §3126(A)(2); and aggravated indecent assault, in violation of section 3125-1 and section 3125-2.

The Commonwealth concedes that the charges of indecent assault and aggravated indecent assault must be dismissed.

Relative to the charge of indecent assault, the applicable statute of limitations found at 42 Pa.C.S. §5552(A) establishes a two-year statute of limitations from the date of commission of the offense. The criminal charges were filed in this case on June 12, 1997. The offense dates testified to at the preliminary hearing were April 22, 1995, and May 8, 1995, both of which were clearly more than two years prior to the date that the criminal complaint was filed on June 12, 1997. Hence, the charge of indecent assault, both counts, must be dismissed.

The defendant next argues that the evidence presented at the preliminary hearing was insufficient to establish a prima facie case of aggravated indecent assault. A necessary element of the aggravated indecent assault is that the defendant engaged in penetration of the alleged victim's body with a portion of the defendant's body other than that covered by the general charge of rape. (18 Pa.C.S. §3121.) In other words, the evidence of penetration must be penetration that is other than the ordinary definition of sexual intercourse. (18 Pa.C.S. §3125.)

In the case at bar, the allegation contained in the criminal complaint was that the defendant penetrated the vaginal area of the alleged victim with his hands and/or fingers. Here, as the Commonwealth correctly concedes, a careful reading of the transcript of the notes of testimony of the preliminary hearing, at which the alleged victim testified, clearly demonstrates that there is absolutely no testimony that the defendant penetrated the vagina of the alleged victim with his hands and/or fingers or any body part of the defendant other than that which would ordinarily occur with sexual intercourse. Accordingly, the Commonwealth correctly concedes that the charge of aggravated indecent assault,

both counts, should be dismissed and habeas corpus relief granted as to the charge of aggravated indecent assault.

The defendant next argues that the charge of rape, two counts, should be dismissed because the evidence presented at the preliminary hearing failed to make out a prima facie case and that no evidence was presented that the acts of sexual intercourse testified to by the alleged victim occurred through the exercise of forcible compulsion or threat of forcible compulsion.

The relevant statutory provisions relating to the two counts of rape charged in this case are set forth in 18 Pa.C.S. §3121-1 and §3121-2 as follows:

"A person commits a felony of the first degree when he or she engages in sexual intercourse with a complainant:

"(1) By forcible compulsion.

"(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. . . ."

The court must first be mindful of the standard by which it must determine the sufficiency of the evidence presented at a preliminary hearing. At a preliminary hearing, the Commonwealth bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978). It is not necessary for the Commonwealth to establish at this stage the accused's guilt beyond a reasonable doubt. The Commonwealth is only required to present evidence with regard to each of the material elements of a charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense. *Com-*

*monwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983); *Lagana v. Office of Attorney General,* 443 Pa. Super. 609, 662 A.2d 1127 (1995). In determining whether or not a prima facie case in support of defendant's guilt has been established, the evidence presented by the Commonwealth must be accepted as true, and be such that it would warrant the trial judge to allow the case to go to the jury. *Commonwealth v. Austin,* 394 Pa. Super. 146, 575 A.2d 141 (1990). Each element of the criminal offense charged must be supported by the Commonwealth's evidence. *Commonwealth v. Austin, supra; Commonwealth v. Wojdak, supra.*

In arguing the failure of the Commonwealth to present sufficient evidence to make out a prima facie case, the defendant contends that the Commonwealth has failed to prove that any alleged act of sexual intercourse that occurred between the defendant and the alleged victim occurred either by forcible compulsion or by the threat of forcible compulsion sufficient to prevent resistance by a person of reasonable resolution.

The evidence which the court must review to determine its sufficiency in terms of establishment of a prima facie case of a charge of rape is the transcript of the testimony given at the preliminary hearing held in this case on July 18, 1997, which has been admitted at the omnibus pretrial hearing as joint exhibit no. 1. At that hearing, the Commonwealth called as its only witness, the alleged victim.

The court will now proceed to summarize the pertinent provisions of the testimony of the alleged victim, accepting as true all portions of that testimony, as the court is required to do at this stage.

The victim testified to being 26 years of age and, for a period commencing approximately three years prior to the dates of the alleged offenses, had been

a patient of the defendant, a psychiatrist. The relationship of doctor-patient was in existence at the time of the alleged offenses.

On or about April 22, 1995, the defendant came to the alleged victim's home at approximately 3 a.m. The alleged victim suspected that the defendant would be coming, because he had called her at least twice the evening prior thereto. When the defendant called and stated that he wanted to come to the alleged victim's home, she attempted to dissuade him by stating that her boyfriend would be coming home shortly.

The alleged victim was sleeping on the couch when the defendant knocked on her door.

The alleged victim answered the door and defendant asked if he could come in and talk to her for a minute.

The alleged victim consented and she and the defendant walked up two flights of stairs and entered the living room area of the alleged victim's apartment. The alleged victim sat on the couch and the defendant sat down right beside her and began touching her in between her legs and up her shirt. The alleged victim was wearing black stretch pants and a long black nightshirt. She told him "no" and said that she was on her period, in order to induce him to quit touching her between her legs. The defendant responded by stating that at least he would not get her pregnant. The defendant then placed the alleged victim on the floor, unzipped his pants and pulled her pants down and then proceeded to have sexual intercourse with the alleged victim. The defendant then got up, zipped his pants up and walked out.

The next event occurred on May 8, 1997, when the defendant came back to the apartment of the alleged victim. The defendant arrived at approximately 9 p.m. and asked if the alleged victim had an extra blue garbage

bag. The alleged victim ran up the steps to try and get the bag to give to defendant, and the defendant followed her up the steps. The defendant went into the alleged victim's bedroom while the alleged victim was in the kitchen. The defendant began undressing while the alleged victim was in her kitchen. The alleged victim was scared and did not know what to do or say. At the time, she was alone in the apartment with her 3-month-old baby girl in her crib. She was "scared" that if she tried to get her child and run, that the defendant would make something up and have her daughter taken away from her or have her (the alleged victim) "put away somewhere." The alleged victim felt this way because the defendant was a psychiatrist and he had the power to write anything in the notes or anything about a person. The alleged victim then walked into the bedroom and sat on the edge of the bed. The defendant pulled her back, laid her on the bed and had intercourse with her.

On the first occasion that the defendant came to the alleged victim's home, the defendant told her that he was "tipsy" from drinking because he was celebrating his first divorce hearing in Butler. The alleged victim could smell alcohol on the defendant. The alleged victim also stated that he was acting like a different person, being very forceful and demanding, which frightened her. She testified that she was frightened because he said he was going to do it anyway, even though she had told him that she was on her period and had told him "no."

The alleged victim reaffirmed in her testimony her fear of being committed by the defendant or of having her child taken from her, and that such fear was the basis for her allowing the defendant to have sexual intercourse with her.

In addition, the alleged victim further testified that the defendant was someone whom she had trusted and that the defendant knew that she was lonely, depressed and vulnerable, and that he had taken advantage of her knowing her "issues with men and abuse" for which he had been treating her.

The Supreme Court, in the landmark case of *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986), established that "forcible compulsion" or "threat of forcible compulsion" connotes more than the exercise of sheer physical force or violence. The Supreme Court stated that the term encompassed the act of using superior force—physical, moral, psychological or intellectual—to compel a person to do a thing against that person's volition and/or will. The *Rhodes* court further explained that in determining whether the evidence is sufficient to prove that the accused engaged in sexual intercourse by forcible compulsion or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, a totality of the circumstances approach must be followed. The Supreme Court set forth a nonexclusive list of factors to be weighed, such factors including the following:

"[T]he respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress." *Id.* at 556, 510 A.2d at 1226.

In *Rhodes*, the facts were that the defendant lived across the street from the 8-year-old victim. The victim had known the defendant for approximately three years. The defendant asked the victim if she wanted to go

somewhere and then led her to an empty room on the second floor of an abandoned building near a playground. When the defendant began to touch her, the victim told him to "stop." Nevertheless, the defendant proceeded to have both vaginal and anal intercourse with the child.

In finding the evidence sufficient to establish the element of forcible compulsion and threat of forcible compulsion, the court found that there is an element of forcible compulsion or threat of forcible compulsion inherent in the situation in which an adult who is with a younger, smaller, less psychologically and emotionally mature and less sophisticated child, instructs the child to submit to the performance of sexual acts. The court said that this is especially so where the child knows and trusts the adult. In such cases, the forcible compulsion or threat of forcible compulsion derives from the respective capacities of the child and the adult which are sufficient to induce the child to submit to the wishes of the adult without the use of physical force or violence or the explicit threat of physical force or violence.

Subsequent to *Rhodes*, and relying upon *Rhodes,* the Superior Court decided the case of *Commonwealth v. Dorman,* 377 Pa. Super. 419, 547 A.2d 757 (1988), where appellant, a 38-year-old uncle of a 13-year-old victim, offered the child a ride to a raceway near her home. Instead of taking the child to the raceway, the defendant drove the child down a dirt road to a secluded wooded area, parked the vehicle, came over to the child's side of the car and began touching her. The child said "don't." Nevertheless, the defendant continued to fondle the child and then removed her clothing as well as his own. Defendant then pushed the child back onto the seat of the car and proceeded to have sexual intercourse with her. The *Dorman* court applied the *Rhodes*

test and concluded that the evidence was sufficient to prove beyond a reasonable doubt that defendant had intercourse with his 13-year-old niece by forcible compulsion and by threat of forcible compulsion. The court noted the remote locality where the incident occurred and the position of authority and trust that the defendant, as the victim's uncle, would have over her and that the victim would thereby feel coerced to submit to the demands out of a sense of duty or obedience. The *Dorman* court stated that while the force used to overcome the will of the victim in this case was to a large extent subtle and psychological, it nonetheless satisfied the element of forcible compulsion necessary to sustain defendant's conviction for rape.

In *Commonwealth v. Frank,* 395 Pa. Super. 412, 577 A.2d 609 (1990), the defendant was a therapist of the victim, providing counseling for the victim, who was approximately 12 or 13 years of age at the time of the incident. During the course of counseling sessions, the defendant would engage in various sexual acts, including anal intercourse, with the child. The child had been taken to the defendant for counseling. The child believed defendant had the ability to ruin his adoption if the child revealed what was occurring during the counseling sessions. The Superior Court in *Frank* emphasized that the defendant occupied a position of authority over the victim, as the victim's counselor and therapist, so that it may reasonably be inferred that the victim would feel coerced to submit to the defendant's demands. As the court noted, the victim was fearful of again re-entering the ranks of the homeless.

A line of cases has developed that have applied the *Rhodes* test. *Commonwealth v. Dorman, supra; Commonwealth v. Frank, supra; Commonwealth v. Ruppert,* 397 Pa. Super. 132, 579 A.2d 966 (1990) (forcible com-

pulsion found where appellant had sexual intercourse with his 9-year-old daughter despite her crying during the incidents, and he showed her sexually-explicit magazines to lower her resistance); *Commonwealth v. Titus,* 383 Pa. Super. 54, 556 A.2d 425 (1989) (evidence was insufficient to convict appellant of the rape of his 13-year-old daughter where the only evidence of forcible compulsion was the parent-child relationship); *Commonwealth v. Ables,* 404 Pa. Super. 169, 590 A.2d 334 (1991) (evidence was sufficient to convict appellant of rape where the victim was the 13-year-old niece of the appellant and a relationship of trust and confidence existed between the victim and the appellant-uncle and where the victim offered resistance).

In *Commonwealth v. Rhodes, supra,* the Supreme Court cautioned that "[i]t is neither desirable nor appropriate to attempt to delineate all of the possible circumstances that might tend to demonstrate that sexual intercourse was engaged in by forcible compulsion . . . ." *Id.* at 556, 510 A.2d at 1226. Thus, the court's conclusion in this case must ultimately rest with the factual circumstances that are unique to this case.

The court finds that in applying the *Rhodes* test to the testimony of the alleged victim, that evidence has been presented that the acts of sexual intercourse were procured through the exercise of forcible compulsion or threat of forcible compulsion.

At the time of the two incidents, the alleged victim was approximately 23 or 24 years of age.

The defendant had been the alleged victim's treating psychiatrist for at least three years as of the time of the incidents. It is reasonable to infer that a 23-year-old woman would have a sense of trust and confidence with her treating psychiatrist. The victim herself testified that she submitted to him out of fear that he would

have her committed or that he would have her 3-month-old child taken away from her.

The first incident occurred when the defendant came to the victim's residence at 3 a.m. The alleged victim made it clear to defendant that she did not wish to have sexual intercourse. Besides saying "no," she told him she was on her period to further dissuade him from engaging in intercourse with her. The evening prior thereto, when the defendant had telephoned the alleged victim, the alleged victim told him that her boyfriend would be present if he attempted to come over, thus indicating her further efforts to try to dissuade the defendant from approaching her.

Although the incident occurred in surroundings familiar to the victim, in that incidents occurred in her apartment, the victim could have hardly been expected to run from the apartment with her 3-month-old daughter. The alleged victim further testified that the defendant smelled of alcohol and that his manner was demanding and forceful.

In the second incident, the alleged victim did not let the defendant voluntarily into her home. He asked for a garbage bag and she turned and went up the steps to obtain one for him quickly so that he would not come in, but, nevertheless, the defendant followed the alleged victim up the steps and entered her bedroom immediately and undressed himself. The alleged victim testified to being scared and went into the bedroom and sat on the edge of the bed, but not with the defendant, out of submission to the authority that she believed he had over her. The victim further testified to having been lonely, depressed and vulnerable at the time of these incidents and the issues for which she had been treating with the defendant included her dealing with men and abuse.

Thus, in applying the *Rhodes* factors to the foregoing evidence, the alleged victim's mental condition was that she was lonely, depressed and vulnerable while she found defendant to be forceful and demanding; the atmosphere and physical setting, alone in her apartment with a 3-month-old child, was such that the alleged victim had nowhere to go for help and was responsible for the safety of her 3-month-old daughter; the defendant was in a position of authority and dominion over the alleged victim as her treating psychiatrist and because of the alleged victim's belief that he had the authority to commit her and to remove her 3-month-old child from her by reason of his position as her treating psychiatrist; the alleged victim's duress is inferable from her lack of consent and her submission to defendant's demands because of her fear and what the alleged victim believed to be the power that the defendant had over the alleged victim.

The defendant's reliance upon *Commonwealth v. Berkowitz,* 537 Pa. 143, 641 A.2d 1161 (1994), is misplaced. In *Berkowitz,* the Supreme Court found that evidence that the victim stated "no" throughout her encounter with defendant and that defendant pushed her on the bed prior to having sexual intercourse with her was insufficient to establish "forcible compulsion" necessary to support a rape conviction. The evidence indicated that the victim was not restrained by the defendant and that she could have attempted to leave the room but did not. The victim was a female college student who had gone to the dormitory room of a friend, entered the room and found the defendant, the roommate of the victim's friend, sleeping in a bed.

The distinguishing factor that makes *Berkowitz* inapplicable to this case is that there was no evidence in *Berkowitz* of any psychological coercion. The victim

and the defendant were both college students. There was no relationship between the victim and the defendant that could be considered to be one of trust or confidence or that would suggest that the victim could reasonably believe that the defendant had power over her. There was no evidence to suggest that the victim had any reason to be fearful of the defendant.

The defendant has also placed reliance upon *Commonwealth v. Mlinarich,* 518 Pa. 247, 542 A.2d 1335 (1988). In *Mlinarich,* the court found that there was not sufficient psychological force exerted upon the victim where the defendant was an adult guardian and threatened the 14-year-old alleged victim that if she did not submit to his demands, she would be recommitted to a juvenile detention facility, a circumstance which she abhorred. As a result of this threat, the victim complied with the defendant's sexual advances. The viability of *Mlinarich* is in doubt since it represents the decision of an equally-divided Supreme Court. Three justices ruled in favor of affirmance of the Superior Court's reversal of the conviction based on lack of forcible compulsion or threat thereof and three justices ruled in favor of reversal of the Superior Court's reversal of the defendant's conviction. Therefore, *Mlinarich* has little precedential value and can hardly be said to have much persuasive value since the case of *Commonwealth v. Rhodes, supra,* has been the landmark case that has led to the development of a line of cases that have applied the *Rhodes* test.

Accordingly, for the reasons set forth in this opinion, the court will issue an order contemporaneously herewith granting the defendant's omnibus pretrial motions relative to the charges of indecent assault and aggravated indecent assault, but denying the defendant's motions relative to the charge of rape, both counts.

## ORDER

And now, February 26, 1998, upon consideration of the defendant's omnibus pretrial motion, in accordance with the accompanying opinion of even date herewith, it is ordered, adjudged and decreed as follows:

(1) The defendant's motion for writ of habeas corpus to dismiss charges of rape at no. 737 of 1997 is denied.

(2) The defendant's petition for writ of habeas corpus and dismissal of the charges of aggravated indecent assault is granted and said charges are dismissed.

(3) The defendant's petition for writ of habeas corpus and dismissal with regard to the charges of indecent assault is granted and the charges of indecent assault are dismissed.

(4) The defendant's motion for discovery as contained in the omnibus pretrial motion is denied, as no evidence or argument was developed on such motion and it therefore appearing that there are no present issues pending regarding discovery.