513 A.2d 410

**COMMONWEALTH of Pennsylvania**

v.

**Joseph Ronald BERRY, Appellant.**

Superior Court of Pennsylvania.

Argued May 20, 1986.

Filed July 25, 1986.

Harry B. Goldberg, Harrisburg, for appellant.

Yvonne A. Okonieski, Assistant District Attorney, Harrisburg, for Com., appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

HESTER, Judge:

This appeal is from judgment of sentence for convictions of rape, indecent assault and corruption of minors. Appellant, Joseph Ronald Berry, was sentenced cumulatively to three to six years imprisonment. Post-verdict motions were denied.

The charges arose from appellant's assaults of February 9, 1983, and February 16, 1983, upon his fifteen-year-old stepdaughter. On both occasions, it was alleged appellant forced her to submit to sexual intercourse.

Appellant raises the following issues. 1) Whether the evidence was sufficient to sustain the verdict? 2) Whether the verdict was contrary to the evidence? 3) Whether the trial court erred in permitting the Commonwealth to amend the informations? 4) Whether appellant was prejudiced by the delay in arrest? 5) Whether the trial court erred in refusing to read all of appellant's submitted points for charge? 6) Whether the trial court erred in permitting the victim's mother to remain in the courtroom despite an order for sequestration of all witnesses? 7) Whether the trial court erred in denying appellant the opportunity to cross-examine the victim concerning her dating relationship with a man? 8) Whether the trial court erred in overruling appellant's objections to alleged hearsay evidence? 9) Whether the trial court erred in ignoring a task force pre-sentence report and in imposing consecutive sentences? 10) Whether the trial court erred in not conducting an evidentiary hearing on certain pre-trial issues?

We will address all issues, with the exception of the last which we summarily dismiss. The following discussion leads us to affirm.

First, appellant argues that the evidence was insufficient to sustain the verdict and that the verdict was contrary to the evidence. A reviewing court shall review all evidence and inferences therefrom in favor of the verdict winner. *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984). In this light, we hold that the evidence was sufficient to sustain the verdict.

The victim testified that on February 9, 1983, she was packing in her room for a camping trip. Her mother was at work, her sister was in her room and appellant was in the master bedroom. The victim was conversing with appellant across the hall and moved to his bedroom when it became difficult to hear. As the victim was sitting on the edge of the bed, appellant approached her, rubbed her neck and pushed her on her back when she attempted to pull away. He then disrobed and raped her. The victim did not protest because she feared appellant would strike her; she knew that appellant frequently struck her sister for disciplinary reasons.

One week later, the victim was watching television when appellant approached her again. As appellant began to rub her back, the victim tried to avert his advances. Again, appellant pushed her down and raped her. The victim's mother and sister were not at home.

Appellant complains that the victim waited sixteen months to report the alleged rapes and did so only in retaliation for appellant having beaten her sister. There was evidence that the victim was reluctant to report the rapes because she feared appellant's revenge and the disruption of the household. The victim testified that her mother desperately wanted appellant to be part of the family. Consequently, the victim wanted to wait until she left the household at age eighteen before reporting the rapes. However, when the family was breaking up as appellant continually alienated the victim's mother and sister, the victim came forward. The altercation between appellant and the victim's sister did not cause the victim to fabricate criminal charges; the altercation was the culmina-

tion of years of bickering and it convinced the victim to report the rapes.

According to appellant, the verdicts were also unsubstantiated because there was no evidence of force, injury or corruption. There was sufficient evidence of force as the victim testified that appellant pushed her down on both occasions and restrained her. Rape does not require injury; it is sufficient if appellant engages in sexual intercourse with the victim by threat of forcible compulsion which prevents her resistance. 18 Pa.C.S. § 3121; *See Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), wherein the Pennsylvania Supreme Court held that forcible compulsion is not limited to physical force or violence; it includes moral, psychological and intellectual force. Injury is similarly not required for corruption of minors; corrupting the morals of a minor in itself constitutes the crime. 18 Pa.C.S. § 6301. Finally, sexual intercourse with a minor is considered corruption of morals.

Appellant alleges several incongruities in the evidence and asserts that the victim's testimony lacked corroboration from her teacher and physician. For instance, appellant questions the verdict because the victim did not complain or scream and did not know whether she was bleeding. As alluded to earlier, a rape victim may be too frightened to resist. Similarly, whether or not the victim was bleeding is not determinative of rape.

The absence of corroboration is not unusual in rape cases. Generally, the victim's testimony alone constitutes the Commonwealth's case, and the jury may rely solely on the victim's account in passing judgment. *See Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979).

Next, appellant argues that the trial court erred in permitting the Commonwealth to amend the informations. Appellant was originally charged with two counts of rape occurring respectively on February 9, 1983, and February 16, 1983, one count of indecent assault occurring on February 16, 1983, and corruption of minors occurring at divers

times. The court permitted the Commonwealth to amend the information by adding a count of indecent assault stemming from the February 9, 1983 incident and by clarifying that the corruption of minors offenses occurred on February 9 and 16, 1983.

Appellant complains that the amendments did not involve a mere change of dates; rather, they allegedly added two separate charges for February 9, 1983. Also, he complains that the amendment of corruption from "diverse" acts to specific instances of corruption was prejudicial. Since these amendments occurred at trial, appellant asserts that he was not prepared to defend an additional indecent assault count and two specific acts of corruption.

Pennsylvania Rule of Criminal Procedure 229 allows the amendment of an information "when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense."

In *Commonwealth v. Stanley*, 265 Pa.Super. 194, 212, 401 A.2d 1166, 1175 (1979), we set forth the test for determining if an amendment is permissible under Rule 229.

> The purpose of Rule 229 is to insure that a defendant is fully appraised (sic) of the charges against him, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. In effecting this purpose, the courts of the Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct.

(Citations and footnotes omitted.)

■ The indecent assault and corruption of minor charges concerned the same incidents on February 9 and 16, 1986,

as the rapes. By adding a count of indecent assault for the February 9 incident, the Commonwealth neither prejudiced nor suprised appellant. The additional charge of indecent assault did not introduce new facts, and did not affect appellant's alibi defense. *See Commonwealth v. King,* 287 Pa.Super. 105, 429 A.2d 1121 (1981). His defense to indecent assault also applied to rape.

■ Appellant incorrectly states that the original charge of corruption of minors charged "diverse" acts. The original charge was for corruption of minors occurring on "divers" dates. When the Commonwealth determined that the corruption and rape charges concerned the same conduct on February 9 and 16, it was able to specify the dates for corruption of minors. For these reasons, we find no error by the trial court in amending the information.

Appellant's third argument is that the trial court erred in denying his motion to dismiss the charges due to the delay in instituting proceedings. According to appellant, the delay of sixteen months in filing charges impaired his alibi defense and denied him the opportunity to have the victim examined medically.

■ To support a claim that pre-arrest delay violated his due process rights, appellant must show both that he was substantially prejudiced and that the prosecution's reasons for the delay were improper. *Commonwealth v. Murphy,* 305 Pa.Super. 246, 451 A.2d 514 (1982). Assuming arguendo that the delay weakened appellant's alibi defense because he could not remember his whereabouts at the time of the incidents, he does not prove that the delay was a Commonwealth ploy for a tactical advantage. The delay was attributed solely to the victim's reluctance to report the incidents because she did not want to anger appellant and disrupt her family. Once she had reported the incidents, investigation and arrest promptly followed.

Appellant next assigns error to the court's refusal to read all of his points for charge. The court denied appellant's

points for charge concerning the missing witness rule and the victim's credibility. Appellant asserts that a charge on the missing witness rule was critical due to the fact that the victim's examining physician and religion teacher were not subpoenaed. The physician could have verified penetration. The religion teacher was allegedly important because she could corroborate the victim's testimony that she cried while reading a passage on incest from her religion book. Appellant infers from their absence that they would have offered unfavorable testimony for the prosecution. As a result, he asserts that he was entitled to a charge on the missing witness rule.

■  When a potential witness who is not called is available to only one of the parties and can provide important testimony which is not merely cumulative, the jury may infer that that witness' testimony would have been unfavorable to the controlling party. *Commonwealth v. Jones,* 455 Pa. 488, 317 A.2d 233 (1974); *Commonwealth v. Stafford,* 307 Pa.Super. 278, 453 A.2d 351 (1982). In *Commonwealth v. Harley,* 275 Pa.Super. 407, 418 A.2d 1354 (1980), we enumerated several significant exceptions to the missing witness rule. The most pertinent involves testimony which is unimportant, cumulative or inferior to that already presented.

■  The physician and teacher could offer cumulative testimony only. Since the medical examination was conducted sixteen months following the rape, the physician was unable to detect bleeding, bruising, tearing or other evidence of force. He could verify sexual intercourse only, but the passage of time prevented a reliable link between intercourse and rape. Similarly, the teacher could not offer information different from that provided by the victim. At most, she could testify that she observed the victim become upset as she read about incest. This was not sufficient testimony to justify the missing witness rule.

■ An instruction on the victim's credibility was properly denied. The court's general instruction on credibility of witnesses adequately addressed the credibility of the victim; there was no need to address the victim's credibility separately.

It is appellant's next contention that the court erred in permitting the victim's mother to remain in the courtroom during the victim's testimony despite a sequestration order. According to appellant, it was not necessary to have the mother present as the victim was receiving emotional support from rape counselors. Moreover, the mother's presence was allegedly damaging because her later testimony may have merely echoed her daughter's testimony.

■ A sequestration order is designed to preclude prospective witnesses from conforming their testimony to that of witnesses preceding them; witnesses shall attest entirely to their own observations and perceptions. *Commonwealth v. Fant*, 480 Pa. 586, 391 A.2d 1040 (1978). Where, however, there is minimal risk that subsequent witnesses will merely echo preceding witnesses, the court may allow those witnesses to remain, with good cause, despite a sequestration order. *See Commonwealth v. Martin*, 479 Pa. 609, 388 A.2d 1361 (1978).

■ The victim's mother, Mary Jo Berry, testified as to her children's relationship with appellant and the altercation her other daughter had with him which prompted the victim to report the rapes. She corroborated the victim's testimony on collateral issues, but she could not testify concerning the actual crimes as she was not home. Therefore, the mother's testimony was unlikely to echo that of her daughter, for in the main, they testified about different topics and events.

Furthermore, Mary Jo could provide more support for her daughter than the counselors could. The victim and her mother had a relationship of mutual respect and love, presumably greater than the victim had with the counsel-

ors. For these reasons, we find no error in not sequestering the victim's mother.

Next, appellant argues that the court erred in denying his request to cross-examine the victim concerning her dating relationship in 1984 with a man in his early twenties. Appellant states that in *Commonwealth v. Black*, 337 Pa. Super. 548, 487 A.2d 396 (1985), we relaxed the rape shield law by holding that a rape victim may be cross-examined on sexual conduct to impeach or to show bias, interest or prejudice.

In *Black*, we permitted cross-examination of the prosecutrix for the purpose of revealing her sexual relationship with her fifteen-year-old brother. The defendant was the prosecutrix's father, and the alleged rape was reported three months later when the defendant and the prosecutrix's brother argued violently, causing the brother to leave home. We permitted evidence on the sibling relationship which might show that the prosecutrix wanted 1) to punish the defendant for terminating that relationship and 2) to remove him from the home so that her brother could return.

■■■ Appellant's proposed cross-examination of the victim does not fall within the parameters of *Black*. Appellant claims that the victim's dating relationship, which might have involved sexual intercourse, would have undermined her trial testimony that she had been ignorant and naive about sexual matters. Although *Black* permits evidence of prior sexual conduct to show a "specific bias" or "hostility" toward the defendant or to show the alleged victim's desire for retribution, we carefully noted that such evidence was inadmissible if its inflammatory nature outweighed its probative value. That is at least the case here, particularly since the victim's dating relationship occurred in 1984, one year following the sexual assaults. We hold, therefore, that the trial court did not err in denying cross-examination on a subsequent relationship.

Appellant argues that the court erred in overruling his objections to certain testimony. Appellant objected on hear-

say grounds to the victim's testimony concerning a passage from her religion book stating that generally parents do not believe children on reports of rape. Secondly, appellant objected to Mary Jo Berry's testimony that her daughter would not lie.

■ The statement from the religion book was not offered for the truth of the matter asserted; whether or not parents believe their child's report of rape was not the Commonwealth's concern. The statement was offered only to explain the victim's delay in reporting the incident.

■ Appellant's specific objection to the mother's testimony was that it concerned the victim's reputation for veracity. This was allegedly improper because it did not relate to the general reputation of the victim in her community. It is true that the credibility of a rape victim is measured according to the same standard applied to any other crime victim. The reputation witness must attest to the victim's general reputation in the community; he may not attest to the victim's specific behavior. *In Interest of Lawrence J.*, 310 Pa.Super. 351, 456 A.2d 647 (1983).

After testifying about the altercation between appellant and the victim's sister, which led the victim to report the rape to her mother, Mary Jo Berry further testified: "And I just looked at her and I—I said tell me it's not true. And she said it is. And I just had to put my arms around her. I had no reason to doubt her, none. My daughter wouldn't lie about something like this." N.T. February 15, 1985, at p. 135. Appellant immediately objected on grounds that the statement was conclusory, and the court overruled the objection. Appellant now argues that the court erred in overruling the objection because the testimony improperly referred to the victim's veracity. We cannot determine how the court would have ruled had appellant asserted that the statement was improper reputation evidence; appellant objected to the statement because of its conclusory nature

only. Where the objection challenges a specific evidentiary matter, all other grounds for excluding the evidence are waived. *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978).

Finally, appellant challenges the sentences on grounds that the court did not give sufficient weight to a task force report and that consecutive sentences for rape were inappropriate. The court did consider the task force report prepared by Alternative Sentencing of Pennsylvania, and letters from two clergymen, appellant's employers and Goodwill Industries. It also considered the remarks of nine witnesses who testified favorably at sentencing as to appellant's behavior, responsibility, temperament and general reputation. The court acknowledged that appellant

> was an excellent citizen of our community. He has been a hard worker, has maintained two jobs for years, was honorably discharged from the United States Navy. We note as well that he is 49 years of age, [and] is physically handicapped....

N.T., August 21, 1985, at 40. Before pronouncing sentence, the court noted that appellant has demonstrated that "he is unlikely to commit another crime." Despite acknowledging these favorable factors, the court noted that the victim had been a young adolescent who was placed in appellant's care and trust. The court was alarmed that appellant had taken advantage of his supervisory position on two occasions.

 In review of the court's articulated reasons for sentence, we cannot hold that it abused its discretion in imposing a sentence for confinement of two to four years for one rape to be followed by one to two years for the other rape.[1]

Judgment of sentence affirmed.

1. Appellant's argument that the trial court erred in failing to conduct an evidentiary hearing on the reasons for the delay in instituting charges and the actual dates and counts of the charges was adequately addressed by the trial court.