556 A.2d 425

**COMMONWEALTH of Pennsylvania**

v.

**Robert R. TITUS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1988.

Filed March 29, 1989.

---

Robert W. Suter, Deputy Public Defender, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Com., appellee.

Before ROWLEY, WIEAND and BECK, JJ.

ROWLEY, Judge:

This appeal of Robert R. Titus is from the judgment of sentence of five to ten years imprisonment that was imposed following his conviction, by the court sitting without a jury, on charges of rape, 18 Pa.C.S. § 3121, and other related offenses. The victim was appellant's thirteen-year-old daughter, D____. Appellant's sole argument on appeal is that the evidence of forcible compulsion or the threat of forcible compulsion was insufficient as a matter of law to support his conviction on the charge of rape. For the reasons set forth below, we reverse the judgment of sentence.

The facts of the case, as derived from the trial testimony, are as follows: In December 1985, D____, who had been living with her mother in Florida, came to live with appellant and his parents in a two-bedroom apartment in Morrisville, Pennsylvania. D____ slept in one of the two bedrooms and her grandparents in the other; appellant sometimes shared the bedroom with D____. Toward the end of December 1985, appellant came home from a night of drinking, got into bed with D____, who was asleep, and, after she awoke, proceeded to have sexual intercourse with her. D____ then pushed him away, after which he left her alone.[1]

In September 1986, appellant gave a written statement to the police in which he admitted having had sex with D____. Coincidentally, D____ returned to Florida in September 1986. Following a non-jury trial, appellant was convicted of rape, 18 Pa.C.S. § 3121; statutory rape, 18 Pa.C.S. § 3122; corruption of minors, 18 Pa.C.S. § 6301; incest, 18 Pa.C.S. § 4302; indecent assault, 18 Pa.C.S. § 3126; indecent exposure, 18 Pa.C.S. § 3127; and endangering the welfare of children, 18 Pa.C.S. § 4304. Posttrial motions were filed and denied. On April 8, 1988, appellant was sentenced to a term of imprisonment of five to ten years, five years being the minimum term mandated by 42 Pa.C.S. § 9718(a) when

---

1. D____ testified that she had sexual intercourse with appellant twice (N.T. at 13). It is not clear from her testimony when the second act of intercourse occurred, and a second incident is not at issue in this appeal.

the victim of rape is under sixteen years of age. This timely appeal followed.

Section 3121 of our Crimes Code, 18 Pa.C.S. § 3121, provides, in pertinent part, that a person commits the offense of rape "when he engages in sexual intercourse with another person not his spouse: (1) by forcible compulsion; [or] (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution...." Appellant's sole argument on appeal is that because there was no testimony that he resorted to forcible compulsion or the threat of forcible compulsion in order to engage in sexual intercourse with his daughter, the evidence is insufficient as a matter of law to support his conviction on the charge of rape.

Where, as here, appellant has preserved his challenge to the sufficiency of the evidence in a post-verdict motion in arrest of judgment,

we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some, or none of the evidence.

*Commonwealth v. Taylor*, 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229–30 (1984) (citations omitted).

At trial, D____ testified that she never consented to have sexual intercourse with appellant (N.T. at 13, 16) and that she tried to stop him by pushing him away (N.T. at 11). Additional questioning made clear, however, that she did not push appellant away until *after* intercourse had occurred (N.T. at 11–12, 15). She testified further that after she pushed appellant away, he left her alone (N.T. at 11, 15). Appellant admitted, as he had earlier in his statement to the police, that he had engaged in sexual intercourse with his daughter (N.T. at 28, 31, 37–38). Asked whether she consented or appeared not to resist, he answered, "Yes, she

seemed like you know don't keep going" (N.T. at 34), which he interpreted variously as "she didn't ... shrug me off" (N.T. at 34), she "didn't try to fight me off" (N.T. at 44), she meant "don't stop keep going" (N.T. at 45), or that she meant, in effect, "leave me alone" (N.T. at 47). In any event, appellant indicated that D____ made the ambiguous comment only *after* the act of intercourse had begun (N.T. at 47–48).

After evaluating the testimony at trial in the light most favorable to the Commonwealth, as we must, we conclude that appellant did not use actual physical force, or the threat thereof, against the victim. At most, the testimony at trial shows that the victim pushed appellant away at some point *after* the act of intercourse had begun. Nevertheless, the trial court concluded, and the Commonwealth argues on appeal, that because appellant was the father of the thirteen-year-old victim, "it may be reasonably inferred that he held a position of authority, and that the father/daughter relationship created a psychological and emotional atmosphere in which the victim was prevented from resisting" (Trial Court Opinion at 5). Accordingly, the trial court held that the Commonwealth had proved forcible compulsion, and therefore rape. The trial court based its holding upon that of our Supreme Court in *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). Accordingly, we turn for guidance to the Supreme Court's opinion in that case.

The defendant in *Rhodes*, a twenty-year-old man who lived near the eight-year-old victim and had known her for several years, lured the victim into an abandoned building and instructed her to submit to sexual acts. A panel of this Court set aside his conviction of rape after concluding that there was insufficient evidence that he had used forcible compulsion or the threat thereof. *Commonwealth v. Rhodes*, 332 Pa.Super. 273, 278, 481 A.2d 610, 613 (1984). The Supreme Court disagreed, holding that " 'forcible compulsion' as used in section 3121(1) includes not only physical force or violence but also moral, psychological or intellectu-

al force used to compel a person to engage in sexual intercourse against that person's will." *Id.* 510 Pa. at 555, 510 A.2d at 1226. Whether a defendant did or did not resort to forcible compulsion [§ 3121(1)] or the threat of forcible compulsion sufficient to prevent resistance by a person of reasonable resolution [§ 3121(2)] is a determination to be made in each case based upon the totality of the circumstances. *Id.*

> Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is by no means exclusive.

*Id.*, 510 Pa. at 555–56, 510 A.2d at 1226. After evaluating the evidence in the case before it, the Court concluded that

> [t]here is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence. . . . This eight year old child was physically and emotionally helpless to resist the commands of her twenty year old neighbor. . . .

*Id.*, 510 Pa. at 557–58, 510 A.2d at 1217. Accordingly, the Court held that the evidence was sufficient to sustain the defendant's conviction.

This Court has cited *Rhodes* in a number of subsequent cases in which sufficient evidence of forcible compulsion or the threat of forcible compulsion was found.[2] In *Commonwealth v. Stambaugh,* 355 Pa.Super. 73, 512 A.2d 1216 (1986), appellant had been convicted of rape upon evidence showing that he had compelled his fourteen-year-old step-daughter to engage in intercourse over a two-year period. This Court upheld the conviction after pointing out that the stepdaughter's past experience with appellant, including physical abuse, and appellant's threats of physical force prevented her resistance.

In *Commonwealth v. Berry,* 355 Pa.Super. 243, 513 A.2d 410 (1986), a panel of this Court, citing *Rhodes,* found sufficient evidence of force in the fact that appellant, the

2. In *Commonwealth v. Mlinarich,* 345 Pa.Super. 269, 498 A.2d 395 (1985), this Court, pre-*Rhodes,* held that "the legislature intended the term 'forcible compulsion' to mean 'physical compulsion or violence'." *Id.,* 345 Pa.Superior Ct. at 272, 498 A.2d at 396. Accordingly, the Court reversed appellant's conviction of rape after finding that his threats to return the fourteen-year-old victim to a juvenile detention home did not constitute forcible compulsion.

The Supreme Court in *Rhodes* noted that the phrase "forcible compulsion" has a broader meaning in common usage than the limited definition adopted in *Mlinarich* and other cases. 510 Pa. at 553 & n. 12, 510 A.2d at 1225 & n. 12. However, when *Mlinarich* itself reached the Supreme Court, subsequent to *Rhodes,* this Court's opinion was affirmed by an equally divided court. *Commonwealth v. Mlinarich,* 518 Pa. 247, 542 A.2d 1335 (1988). In the Opinion in Support of Affirmance, Chief Justice Nix, citing the Court's opinion in *Rhodes,* acknowledged that psychological coercion could be so intense as to overpower a victim's will to resist, but he concluded that that had not happened in the case at bar. *Id.,* 518 Pa. at 260–61, 542 A.2d at 1342. Instead, the victim had made a deliberate choice to submit to Mlinarich's demands rather than risk being returned to the detention home. *Id.,* 518 Pa. at 258–59, 542 A.2d at 1341.

In a strongly worded Opinion in Support of Reversal, Justice Larsen asserted that "*Rhodes* is the law of this Commonwealth, and is unquestionably dispositive in this case; *Rhodes* compels the conclusion that Mlinarich engaged in sexual intercourse with the child victim without her consent and by forcible compulsion or its threat." 518 Pa. at 274, 542 A.2d at 1349. This Court, after considering the effect of the Supreme Court's holdings in *Rhodes* and in *Mlinarich,* has also concluded that *Rhodes* remains the law of the Commonwealth. *Commonwealth v. Dorman,* 377 Pa.Super. 419, 427–29, 547 A.2d 757, 761 (1988); *Commonwealth v. Thek,* 376 Pa.Super. 390, 392 n. 1, 546 A.2d 83, 85 n. 1 (1988). Accordingly, we apply *Rhodes* in the present case.

fifteen-year-old victim's stepfather, had pushed the victim down and restrained her. In addition, the victim testified that she did not protest, except for attempting to pull away from appellant, because she knew that appellant had often struck her sister for disciplinary reasons.

The facts of *Commonwealth v. Gabrielson*, 370 Pa.Super. 271, 536 A.2d 401 (1988), *allocatur denied*, 518 Pa. 636, 542 A.2d 1365 (1988), indicated that the victim, who was apparently an adult, was taken by appellant to an isolated, wooded area, where he threatened to beat her up badly if she refused to have intercourse with him. This Court, following the instruction of the Supreme Court in *Rhodes* to consider, *inter alia,* the physical locale of the offense, the extent of appellant's authority and dominion over the victim, and whether the victim engaged in intercourse under duress, concluded that the Commonwealth had proved the forcible compulsion element of rape.

In *Commonwealth v. Dorman*, 377 Pa.Super. 419, 547 A.2d 757 (1988), the thirteen-year-old victim was driven by appellant, her thirty-eight-year-old uncle, to a remote, wooded area, where he pushed her down on the seat of the car and had intercourse with her. Although the victim did not resist, except for saying "don't," this Court found the absence of more forceful resistance to be easily understandable given the remote location and "volatile circumstances" in which the victim found herself. *Id.,* 377 Pa.Superior Ct. at 429, 547 A.2d at 762. "More importantly, appellant, who was the victim's uncle, occupied a position of authority and trust such that the victim would feel coerced to submit to his demands out of a sense of duty or obedience." *Id.* Having considered the factors noted in *Rhodes,* this Court held that the evidence of forcible compulsion or the threat thereof was sufficient to sustain appellant's conviction.

In addition, although *Rhodes* was not cited by this Court in *Commonwealth v. Poindexter*, 372 Pa.Super. 566, 539 A.2d 1341 (1988), the Court nevertheless found sufficient evidence of force, "by and large subtle and psychological," *id.,* 372 Pa.Superior Ct. at 574, 539 A.2d at 1344 (quoting

trial court), to uphold appellant's conviction for the rape of his three daughters. In reaching this conclusion, the Court took into account the trial court's findings that appellant's assaults had begun when the girls were quite young (pre-puberty), that they submitted to his demands out of obedience to his parental authority, that he overcame their resistance by reproaches and threats of beatings, that two of them were in fact beaten on two occasions, and that as they grew older, appellant warned them to remain silent in order not to split up the family.

When the facts of the present case are compared to *Rhodes* and its progeny, a number of dissimilarities are apparent. In the case at bar, the victim was not threatened by appellant; although it is not known whether her grandparents were nearby when the assault occurred, she was nevertheless not taken to a remote, unfamiliar location from which help could not be summoned; there was no testimony that either she or other family members had been abused by appellant in the past, and in fact we know nothing about appellant's past relationship with the members of his family.[3] Because it is the Commonwealth's burden to prove, beyond a reasonable doubt, every element of the offense with which appellant was charged, *Commonwealth v. Graves*, 461 Pa. 118, 126, 334 A.2d 661, 663 (1975), the uncertainty created by the absence, in this case, of the type of information that is present in similar cases redounds to the benefit of appellant.

■ In the present case, the trial court based its finding of sufficient evidence of forcible compulsion upon the fact

3. At sentencing the assistant district attorney described D____ as "mentally retarded" (Sentencing Transcript at 4). However, no evidence was offered at trial regarding D____'s educational history, and the court, with the Commonwealth's consent, sustained appellant's demurrer to, *inter alia*, count four of the information, which charged appellant with engaging in sexual intercourse with one who was "so mentally deranged or deficient [as to be] incapable of consent" [18 Pa.C.S. § 3121(4)]. Appellant did not demur to count fourteen, which charged him with indecent assault pursuant to 18 Pa.C.S. § 3126(2), "know[ing] that the other person suffers from a mental disease or defect which renders ... her incapable of appraising the nature of ... her conduct."

that appellant, as D____'s father, could reasonably be assumed to have exercised authority over D_____. However, neither *Rhodes* nor its progeny holds that the mere fact of a parent/child relationship, without more, establishes the existence of "moral, psychological or intellectual force" sufficient to sustain a conviction of rape. In each of the cases cited above in which the assailant's role as an authority figure who was known to the victim contributed to the finding of forcible compulsion or the threat thereof, additional contributing factors were present: in *Dorman,* the remote locality and the uncle's use of force to push the victim down; in *Poindexter,* the father's reproaches and threats, the beatings of two of the victims, and their fear of breaking up the family; and in *Rhodes* itself, the extreme youth of the victim and the isolated location to which she was taken.

Our review of the cases just cited indicates that the trial court's ruling has extended the *Rhodes* holding beyond the existing boundaries of case law. In effect, the trial court holds that every act of sexual intercourse between father and minor daughter will be held to constitute rape, as well as incest, if the daughter testifies that she did not consent to the act. The relevant statutory provisions, however, offer no support for such a conclusion. If the legislature had intended the mere existence of a parent-child relationship, without more, to constitute "forcible compulsion" or the "threat of forcible compulsion that would prevent resistance by a person of reasonable resolution," such a presumption could have been written into the Crimes Code in the same manner as, for example, the presumption, embodied in 18 Pa.C.S. § 3123(5), that deviate sexual intercourse with a victim under the age of sixteen is necessarily involuntary. The absence of any such legislative presumption argues against its establishment by judicial fiat.

■ More importantly, given the unique facts of the present case, we cannot agree with the trial court that "it may be reasonably inferred that [appellant] held a position of authority [over D____]" (Trial Court Opinion at 5). At the

time of the incident in question, D‗‗ had been living with appellant for less than a month. The record is devoid of evidence concerning the nature of their relationship, if indeed there was any relationship between them, before D‗‗ moved to Morrisville from Florida, nor does the record explain why D‗‗ left Florida in order to live with appellant. D‗‗'s only comments on her relationship with appellant in the period preceding the incident was that she was sometimes affectionate with him and that she would sometimes "wait up" for him to come home at night (N.T. at 15). These comments tell us nothing about the nature and degree of authority that appellant exercised over D‗‗.

Nor can we accept the Commonwealth's assertion that from D‗‗'s testimony that *after* the incident in question appellant would always slap her face when she expressed a desire to return to Florida (N.T. at 12–13), we may reasonably infer "the atmosphere and physical setting of the household where the incident took place, as well as the appellant's position of authority and custodial control over the victim" (Brief for Appellee at 5–6). It is equally possible that appellant's sexual interaction with his daughter poisoned the family atmosphere and led to appellant's subsequent hostile behavior toward D‗‗, or that appellant struck D‗‗ in frustration because she *refused* to accept his authority.

Assuming, for the sake of argument only, that the usual family situation is for a father to exercise a considerable degree of authority over a thirteen-year-old daughter, nevertheless the limited duration of the relationship at issue here, and the limited information available to us concerning that relationship, does not allow us to assume that the usual situation prevails. As noted earlier, it is the Commonwealth's responsibility to prove beyond a reasonable doubt that appellant used forcible compulsion or the threat thereof against D‗‗. Even after viewing the evidence presented at trial and all reasonable inferences therefrom in the light most favorable to the Commonwealth, as we must, we cannot say that the Commonwealth has met its responsibility in this regard. Appellant's conduct in engaging in sexual

relations with his thirteen-year-old daughter is abhorrent and fully merits the punishment attendant upon conviction of statutory rape, incest, and the other offenses of which appellant was found guilty. We do not perceive in the record before us, however, evidence of force, whether moral, psychological, intellectual, or physical, sufficient to sustain appellant's conviction of rape.

At the close of sentencing, the trial court sentenced appellant to a term of incarceration of five to ten years without indicating whether the sentence being imposed was for the offense of rape, statutory rape, corruption of minors, incest, indecent assault, indecent exposure, and/or endangering the welfare of children. We assume the sentence imposed was for the offense of rape, inasmuch as the court noted that the sentence was mandatory, and rape is the only one of the offenses committed by appellant which entails a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718(a).

Accordingly, the judgment of sentence is vacated; the judgment of sentence on the charge of rape is arrested; and the case is remanded for resentencing on the remaining charges. Jurisdiction is relinquished.