J-S25019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RUSSELL EARL LATTIMER | |
| Appellant | No. 1473 MDA 2013 |

Appeal from the Judgment of Sentence entered April 2, 2013
In the Court of Common Pleas of Bradford County
Criminal Division at No: CP-08-CR-0000546-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RUSSELL EARL LATTIMER | |
| Appellant | No. 1474 MDA 2013 |

Appeal from the Judgment of Sentence entered April 2, 2013
In the Court of Common Pleas of Bradford County
Criminal Division at No: CP-08-CR-0000549-2012

BEFORE: OTT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 01, 2014**

Appellant, Russell Earl Lattimer, appeals from the April 2, 2013 judgment of sentence. We affirm.

At docket number CP-08-CR-0000546-2012, a jury found Appellant guilty of rape, aggravated indecent assault, intimidation of witnesses,

statutory sexual assault, and indecent assault.[1]  At docket number CP-08-CR-0000549-2012, a jury convicted Appellant of rape, aggravated indecent assault, three counts of indecent assault, and sexual assault.[2]

The Commonwealth charged Appellant with committing the aforementioned sexual offenses against five female victims, including his biological daughter and four daughters of his paramour.  The rape and aggravated indecent assault convictions resulted from Appellant's victimization of S.T. and T.O., two daughters of Appellant's paramour.

S.T., 26 years old at the time of trial, testified that she was twelve years old the first time Appellant had sex with her.  N.T. Trial, 11/15/12 at 25, 37-40.  She began living in Appellant's home at age 11 and moved out when she was 20 or 21.  *Id.* at 27, 30.  In describing her first sexual encounter with Appellant, S.T. said she went into Appellant's bedroom to ask him a question.  *Id.* at 34.  S.T. was home sick from school at the time, and her mother was at work.  *Id.* at 36.  As she was leaving the bedroom, Appellant asked S.T. to sit on the bed and talk to him, so she did.  *Id.* at 34-35.  Appellant started touching her vagina and chest.  *Id.* at 35.  When S.T. asked Appellant why he was touching her, he told her she would like it.  *Id.* at 35.  Appellant proceeded to take S.T.'s clothes off and "have sex" with

_____

[1]  18 Pa.C.S.A. §§ 3121(2), 3125, 4952, 3122.1, and 3126, respectively.

[2]  Sexual assault is codified at 18 Pa.C.S.A. § 3124.1.

her. *Id.* at 36. He stopped "when he was done." *Id.* S.T. told Appellant to stop and that he was hurting her. *Id.* at 37.

Appellant continued having sex with S.T. two or three times per week until after her high school graduation. *Id.* at 45. S.T. testified that Appellant used condoms at first, but stopped using because S.T. had an allergic reaction to them. *Id.* at 42. Appellant would occasionally ejaculate outside of her after that. *Id.* If S.T. refused to submit to the sexual encounter, Appellant would treat her "like crap," refusing to communicate with her or do anything for her. *Id.* at 40. When she submitted, Appellant would buy her things such as clothes, a cell phone, and a computer for her room. *Id.* at 40-41. Appellant would allow S.T. to visit her boyfriend only if she submitted to sex with Appellant. *Id.* at 44. After S.T.'s high school graduation, Appellant made payments on S.T.'s car for her as long as she kept having sex with him. *Id.* at 45-46. She was 19 years of age at that time. *Id.* at 57.

T.O. was 24 years old at the time of trial. *Id.* at 101. She lived in Appellant's home from age 11 to 19. *Id.* at 102, 105. Appellant acted as a father and was in charge of the household. *Id.* at 106. When she was 12 years old, Appellant began touching her breasts and vagina. *Id.* at 107-08. T.O. did not report Appellant's behavior "[b]ecause he told me that if I told anyone, that our whole family would be broken apart, we would be put in foster care, and that my mom could go to jail. He also told me that my

mom wouldn't believe me." *Id.* at 109. She testified that Appellant had sexual intercourse with her for the first time on her 13th birthday. *Id.* at 110. After that, Appellant continued to have sexual intercourse with T.O. several times per week until T.O. was 19. *Id.* at 111-12, 117. On each occasion, he withdrew and ejaculated outside of her in order to avoid pregnancy. *Id.* at 113. T.O. allowed the conduct to continue because she was afraid her family would break up if she told anyone. *Id.* at 119.

A jury found Appellant guilty of the aforementioned offenses at the conclusion of the November 15, 2012 trial. Prior to sentencing, the Sexual Offenders Assessment Board concluded Appellant was a sexually violent predator. The trial court imposed an aggregate sentence of 35 years and 7 months to 81 years of incarceration on April 2, 2013. Appellant filed a timely post-sentence motion on April 10, 2013, in which he challenged the weight of the evidence and the discretionary aspects of his sentence. The trial court denied that motion on July 29, 2013 and this timely appeal followed.

Appellant raises four assertions of error:

I.    Whether the Commonwealth presented sufficient evidence of penetration to sustain verdicts of guilty on rape and aggravated indecent assault?

II.   Whether the Commonwealth presented sufficient evidence of threat of forcible compulsion to sustain verdicts of guilty of rape?

III.  Whether the trial court abused its discretion in denying the motion in arrest of judgment?

IV.    Whether the sentence is unduly harsh and excessive?

Appellant's Brief at 11.

Appellant's first two arguments challenge the sufficiency of the evidence.  We will address the first these arguments together, pursuant to the well-settled standard of review:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt.  The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubt raised as to the accused's guilt is to be resolved by the fact-finder.  As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record.  Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotation marks omitted).  As sufficiency of the evidence poses a question of law, or standard of review is *de novo* and our scope of review is plenary.  *Commonwealth v. Staton*, 38 A.3d 785, 789 (Pa. 2012).

Appellant's arguments arise under 18 Pa.C.S.A. § 3121(a)(2), which defines rape as follows:

§ 3121.  Rape.

(a)  Offense defined. --A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

[…]

(2)  By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

18 Pa.C.S.A. § 3121(a)(2).  Sexual intercourse includes, "[i]n addition to its ordinary meaning, [. . .] intercourse per os or per anus, with some penetration however slight; emission is not required.  18 Pa.C.S.A. § 3101. Forcible compulsion includes:  "Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied."  *Id.*[3]

_____

[3]  The Pennsylvania Crimes Code defines aggravated indecent assault as follows:

(a)  Offenses defined. --Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

(1) the person does so without the complainant's consent;

(2) the person does so by forcible compulsion;

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

[…]

(7) the complainant is less than 13 years of age;

*(Footnote Continued Next Page)*

Appellant first argues the Commonwealth failed to produce sufficient evidence of penetration to support the rape and aggravated assault convictions. As noted above, S.T. and T.O. both testified that Appellant repeatedly had sexual intercourse with them several times per week throughout their teenage years. Appellant argues that testimony indicating he and the victims "had sex" is ambiguous. Appellant's Brief at 18. This argument strains credulity, in that S.T. and T.O. were in their mid-twenties at the time of trial and clearly understood their testimony. In addition, both victims testified that Appellant would withdraw and ejaculate outside of them to avoid pregnancy. The record contains overwhelming evidence that Appellant engaged in sexual intercourse, as that term is defined in § 3101, with both S.T. and T.O.

Appellant also asserts his conviction for aggravated assault of a victim less than thirteen years of age with respect to T.O. cannot stand because T.O. testified that she first had intercourse with Appellant on her thirteenth

_(Footnote Continued)_ —————————————

[…]

(b) Aggravated indecent assault of a child. --A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3125.

birthday.[4]   Appellant concedes that he failed to include this issue in his Pa.R.A.P. 1925(b) statement, which results in waiver.   Pa.R.A.P. 1925(b)(4)(vii).[5]

Next, Appellant argues the record does not contain sufficient evidence that his intercourse with S.T. and T.O. took place under threat of forcible compulsion.  In **Commonwealth v. Rhodes**, 510 A.2d 1217 (Pa. 1986), the

_____

[4]   S.T. testified that she and Appellant began having sex prior to her thirteenth birthday.

[5]   Regardless of Appellant's waiver of this issue, we explained above that prior to T.O.'s thirteenth birthday, Appellant used his fingers to touch her vagina.   This Court has held similar conduct sufficient to establish penetration:

> [T]he definition of 'sexual intercourse' found at [18 Pa.C.S.A. § 3101] does not specify 'penetration of the vagina,' but instead specifies 'some penetration however slight' […] entrance in the labia is sufficient[.]   We therefore will not hold that a finding of penetration of the vagina is necessary for the jury to find 'penetration however slight' under Section 3101, […] since penetration of the vagina, in essence the farther reaches of the female genitalia, is not necessary to find penetration under Section 3101[.]"

**Commonwealth v. Ortiz**, 457 A.2d 559, 560-61 (Pa. Super. 1983); **see also**, **Commonwealth v. Zeigler**, 550 A.2d 567, 569-70 (Pa. Super. 1988) (victim's testimony that the defendant licked her vagina sufficient to establish penetration), *overruled in part on other grounds*, **Commonwealth v. Goggins**, 748 A.2d 721 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 120 (Pa. 2000).  Appellant's first argument lacks merit.

We further observe that aggravated indecent assault occurs when the perpetrator penetrates genitals or anus of the victim with a part of his or her body.   18 Pa.C.S.A. § 3125(a).   Digital penetration is therefore sufficient. **Commonwealth v. Bishop**, 742 A.2d 178, 189-90 (Pa. Super. 1999), *appeal denied*, 758 A.2d 1194 (Pa. 2000).

20-year-old perpetrator raped his 8-year-old neighbor. *Id.* at 1218. They had been neighbors for three years. *Id.* The perpetrator sexually assaulted the victim after he led her to an upstairs room in an abandoned building and instructed her to lie down on the floor and pull her legs up. *Id.* The Supreme Court set forth the following guidelines for ascertaining the existence of forcible compulsion or threat thereof:

> The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion (which we have defined to include not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will,[]), or by the threat of such forcible compulsion that would prevent resistance by a person of reasonable resolution is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder. Significant factors to be weighed in that determination would include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress. This list of possible factors is by no means exclusive.

*Id.* at 1226.

In ruling that the record contained sufficient evidence in support of a conviction for rape by threat of forcible compulsion, the Court wrote:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts.

> This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ('prevent resistance'), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id.* at 1227.  Thus, the 20-year-old perpetrator who knew the 8-year-old victim for three years and lured her into an abandoned building committed rape by threat of forcible compulsion.  *Id.*  The Supreme Court therefore reversed this Court's conclusion to the contrary:  "the illicit commands of this twenty year old [man] in an isolated and abandoned room were . . . an imperative which gave the [eight year old] child victim no alternative but submission to appellant's corrupt scheme.  This eight year old child was physically and emotionally helpless to resist the commands of her twenty year old neighbor[.]"  *Id.* (quoting *Commonwealth v. Rhodes*, 481 A.2d 610, 614 (Pa. Super. 1984) (Cavanaugh, J. dissenting), *rev'd*, 510 A.2d 1217 (Pa. 1986)).

Appellant relies primarily on *Commonwealth v. Titus*, 556 A.2d 425 (Pa. Super. 1989), in which this Court found insufficient evidence of threat of forcible compulsion where the defendant was convicted of raping his 13-year-old daughter.  *Id.* at 426.  The defendant came home from a night of drinking, got in bed with his daughter, and had sex with her after she awoke.  *Id.*  The victim pushed the defendant away after the intercourse was over.  *Id.*  In reversing the rape conviction, this Court reasoned that a

parent-child relationship, in and of itself, is not sufficient to support a finding of forcible compulsion. *Id.* at 429. Since no fact of record, other than the father/daughter relationship, supported a finding of forcible compulsion, this Court vacated the judgment of sentence. *Id.* at 430. In distinguishing **Rhodes**, the trial court noted additional factors contributing to the finding of forcible compulsion in that case, such as directing the victim to a remote location where she could not get help. *Id.* at 429.

Indeed, in many cases where a familial relationship exists between the perpetrator, the courts rely on additional factors to support a finding of forcible compulsion. **See Commonwealth v. Ables**, 590 A.2d 334, 338 (Pa. Super. 1991) (finding sufficient evidence of forcible compulsion where the defendant repeatedly victimized his thirteen-year-old niece and told her if she told anyone she would get into trouble), *appeal denied*, 597 A.2d 1150 (Pa. 1991); **Commonwealth v. Ruppert**, 579 A.2d 966, 969 (Pa. Super. 1990) (finding sufficient evidence of forcible compulsion where the father, who repeatedly sexually victimized his nine-year-old daughter over the course of three months, showed her sexually explicit magazines to encourage her to imitate what she saw), *appeal denied*, 588 A.2d 914 (Pa. 1991).

Instantly, the parties do not dispute that Appellant served as a father figure to both S.T. and T.O. In addition to this relationship, the record contains evidence that Appellant would withhold favorable treatment from

S.T. if she did not submit to sexual intercourse. Likewise, Appellant told T.O. that her family would break up if she divulged Appellant's behavior to anyone. Appellant continued this course of conduct from the victims' pre-teen years until they reached the age of majority. In other words, Appellant used psychological and emotional force to gain submission from S.T. and T.O., who clearly were unwilling victims. As such, the record contains evidence, in addition to the familial relationship, indicating that Appellant engaged in behavior calculated to overcome the victims' resistance. *See Commonwealth v. Poindexter*, 539 A.2d 1341, 1344-45 (Pa. Super. 1988) (finding sufficient evidence of forcible compulsion where the sexual assaults commenced when the victims were young and the perpetrator used "subtle and psychological" force to gain submission, including threats that their family would break up if they told anyone), *appeal denied*, 549 A.2d 134 (Pa. 1988). This case is easily distinguishable from *Titus*, which involved a single incident of sexual intercourse not precipitated by any physical or psychological force. Appellant's second argument lacks merit.

Appellant's third argument challenges the weight of the evidence in support of his rape convictions.

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the factfinder. Rather, a new trial is warranted only when the jury's verdict is 'so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.' Where, as here, the judge who presided at trial ruled on the

- 12 -

weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003) (citations omitted), *cert. denied*, 541 U.S. 1045 (2004). Appellant preserved this issue in a timely post-sentence motion in accordance with Pa.R.Crim.P. 607(A)(3). We therefore proceed to assess the trial court's discretion in denying Appellant's motion for a new trial.

Appellant argues the victims were not able to give dates, days of the week, or times of day that many of the sexual assaults occurred. Appellant's Brief at 28. Appellant also argues his biological daughter T.L.'s trial testimony was inconsistent with a prior statement she made to a social worker. *Id.* Appellant also argues the jury failed to give sufficient weight to the victims' failure to report the assaults in timely fashion and that some of them allowed the sexual relationship with Appellant to continue into adulthood. *Id.*

None of these assertions warrants a new trial. Given that Appellant committed numerous sexual assaults over many years, it is not surprising the victims could not recite dates and times. Further, the jury was free to assess the victims' credibility in light of the level of detail in their testimony. Similarly, the jury could assess the credibility of T.L.'s trial testimony in light of her prior inconsistent statement. Finally, the ongoing sexual conduct

between the victims and Appellant and the delay in the victims' decision to report Appellant's conduct was relevant to the victim's credibility. A reviewing court will not disturb the jury's credibility findings. ***Commonwealth v. Blakeney***, 946 A.2d 645, 653 (Pa. 2006) ("Assessing the credibility of witnesses at trial is within the sole discretion of the fact-finder."), *cert. denied*, 555 U.S. 1177 (2009). The trial court acted well within its discretion in denying Appellant's motion for a new trial.

Appellant's final assertion of error is that the trial court abused its discretion in imposing a sentence of 35 years and 7 months to 81 years of incarceration. Appellant was 58 years old at the time of sentencing, and he argues the trial court abused its discretion in imposing a virtual life sentence.

Appellant preserved this issue in a timely post-sentence motion, and his brief includes a Pa.R.A.P. 2119(f) statement asserting that a substantial question exists. The 2119(f) statement notes that the trial court arrived at its sentence by imposing sentence at the top of the aggravated range for each offense and running the sentences consecutively. Appellant argues the aggravated range sentences were inappropriate because Appellant's offenses were not atypical of the crimes for which Appellant was convicted. This argument raises a substantial question. ***Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa. Super. 2006). We will therefore review the merits of Appellant's sentencing challenges.

We review the trial court's sentence for abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). The sentencing court must "impose a sentence that is 'consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" *Id.* at 962 (quoting 42 Pa.C.S.A. § 9721(b)). Where, as here, the trial court's sentence falls within the sentencing guidelines, the reviewing court may reverse only if the sentencing court applied the guidelines improperly or if the sentence is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(1), (2).

In conducting our review of the record, we must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Appellant repeatedly sexually abused five young women, to whom he was a father and father figure over a period of years. The trial court noted the victims were young women Appellant should have been protecting rather than exploiting. Trial Court Opinion, 11/6/13, at 4-5. He was in the home when his paramour was working and took advantage of the victims when no one was there to protect them. *Id.* As such, the trial court concluded aggravated range sentences were appropriate. *Id.* at 5. Based on all of the

- 15 -

evidence of record, as summarized above, we conclude the trial court acted within its permissible discretion in imposing sentences at the top of the aggravated range.

Appellant also argues the trial court abused its discretion in imposing the sentences consecutively. He cites **Commonwealth v. Dodge**, 957 A.2d 1198 (Pa. Super. 2008) ("**Dodge II**"), *appeal denied*, 980 A.2d 605 (Pa. 2009) for the proposition that a trial court can abuse its discretion in creating a *de facto* life sentence by imposing numerous consecutive sentences. In **Dodge II**, the trial court imposed 52½ to 111 years of incarceration for numerous thefts of personal property of little monetary value. **Id.** at 1199, 1201. Given the absence of injured victims or violent crime, we concluded the trial court abused its discretion imposing a *de facto* life sentence. **Id.** at 1202. The rationale of **Dodge II** plainly has no application here, where Appellant repeatedly engaged in the sexual abuse of five young women who lived in his home with him. Appellant has failed to offer a meritorious argument that the trial court abused its discretion in imposing consecutive sentences.

Finally, Appellant asserts the trial court improperly disregarded his rehabilitative needs. A defendant's rehabilitative needs are relevant under the Sentencing Code, but they must be weighed alongside protection of the public, the gravity of the offense, and the impact on the victims. 42 Pa.C.S.A. § 9721(b). Here, the trial court was well aware of the gravity of

- 16 -

Appellant's offenses and their impact on the victims. Moreover, the trial court was aware the conduct continued for years until Appellant was arrested. After Appellant was arrested and jailed, he wrote a letter to S.T. asking her not to say anything if she could avoid it. N.T. Trial, 11/15/12, at 47, 49-51.:

> Q. I'm gonna refer you to paragraph four of the letter – or excuse me, page four. And there's a paragraph that begins: If they ever ask. Do you see that paragraph?
>
> A. Yes.
>
> Q. Can you read that to us?
>
> A. If they ever ask if I did anything to you, too, and you really have to, tell them yes it was when you lived where [name deleted] lives **and you wanted me. But don't say anything if you don't have to.** And don't say anything about this on the phone calls [sic] are monitored.

*Id.* at 51 (emphasis added). Thus, when Appellant was facing criminal charges he asked S.T. to say nothing or maintain that she was a willing victim.

In light of the foregoing, the trial court acted within its permissible discretion in weighing the § 9721(b) factors and discounting the prospect of Appellant's prospects of rehabilitation. Appellant's challenge to the trial court's exercise of its sentencing discretion does not merit relief.

Since we have reviewed each of Appellant's arguments and found none of them meritorious, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/1/2014</u>